Willison v. Salmon.

JULIA B. WILLISON, appellant,

v.

ALBERT B. C. SALMON, receiver &c., respondent.

1. Under supplementary proceedings against W.. a judgment debtor, a receiver was appointed in pursuance of the statute. At the time of such appointment W. was executing a building contract, the work being unfinished and the payment under the contract not yet due.—*Held*, that the statute does not operate upon such an inchoate right, and that the receiver acquired no title to the payment which subsequently became due after the work was completed.

2. The regular course of proceeding on a bill of interpleader is to take a decree that the defendants interplead, which withdraws the complainant in the original bill from further participation in the suit, and the case then becomes a case between the defendants as between a complainant and defendant.

In May, 1885, George M. Douglass recovered a judgment in the supreme court of this state against James B. Willison for $2,440.53, upon which execution was issued and returned wholly unsatisfied.

Willison was a builder and contractor. Shortly after the entry of the judgment against him, he gave up doing business in his own name, and thereafter took all contracts and did all his business in the name of his wife, Julia B. Willison. In March, 1886, Mrs. Willison, acting through her husband, made a contract with complainant, Elizabeth Bowlby, for the erection of a house in Newark. The contract was duly filed in the clerk's office.

On July 1st, 1886, Douglass, the judgment creditor, obtained an order for the examination of James B. Willison upon supplementary proceedings. The examination disclosed the fact of the transfer of Willison's business to his wife, the existence of the Bowlby contract, and that the final payment of $1,000 was about due on this contract, the building being completed except as to a few minor details. On July 15th, 1886, A. B. C. Salmon was appointed by the supreme court as receiver of the things in action &c. of Willison, and especially of the sum due on said Bowlby contract, "so far as the same belonged to him." The

17

receiver at once served notice of his appointment on Mrs. Bowlby, and notified her to pay all sums due on the contract to him, as receiver, and not to Mrs. Willison. The building was afterwards finished by Mrs. Willison, acting through her hus-band.

Various material-men, who had furnished to Mrs. Willison material for the erection of the building, served notices on the complainant, demanding payment to them of their bills out of the amount due on the contract. These notices were all served after the appointment of the receiver.

Thereupon the complainant filed her bill, asking that the receiver and the various claimants interplead. The parties having all answered the bill, the cause was heard on pleadings and proofs before *W. B. Williams, Esq.*, advisory master. Complainant having taken a decree requiring defendants to interplead, paid into court the money due on the contract.

---

The advisory master filed the following conclusions, which are also reported in *11 N. J. L. J. 42* :

It appears, clearly, that the house was not finished, and the final payment of $1,000, now in dispute, was not earned by the contractor until August 3d, 1886. The architect's certificate seems also to have been essential under the contract; and this was not given until August 5th. See *Byrne v. Sisters of St. Elizabeth, 16 Vr. 213.*

Miller and Moses served their notices on Mr. Hays, as the owner's agent, on July 14th, and he says he showed them to the owner a few days or a week afterwards. So that, whether the service made on him was sufficient, or whether we consider it made when he showed them to Mrs. Bowlby, they were served before the house was finished. They were therefore ineffectual to create a lien upon or work an assignment of the fund, under the ruling on Butler's claim in *Kirtland v. Moore, 13 Stew. Eq. 106, 110.*

Miller's notice is also fatally defective in not stating a refusal by the contractor to pay.

Willison v. Salmon.

Carnelli served his notice, he says, between August 3d and 5th, after the house was finished. But it is insufficient, like Miller's, because it omits to state the contractor's refusal to pay.

Bradley and Currier's first notice was unavailing on both the above grounds. Their last notice was served August 31st, after the fund was earned, and is sufficient in form, and they have proved the demand on and refusal by the contractor, so that in their case the other questions raised must be met.

I think the evidence shows clearly that Mr. Willison was carrying on the business of building, including this particular contract, under cover of his wife's name, as a mere device to evade and hinder the judgment creditor, Douglass. By the proceedings for discovery and appointment of receiver, whatever rights Willison had in this contract passed to the receiver, who could take any action necessary to remove or break away the fraudulent cover, as against Mrs. Willison (*Miller* v. *Mackenzie*, *2 Stew. Eq. 291*; *Bergen* v. *Littell*, *14 Stew. Eq. 18*), and as against any one holding under her with notice either of the fraud or of the proceedings in discovery. *Coleman* v. *Roff*, *16 Vr. 7*.

So far as regards money already due and payable in any undertaking carried on under a fraudulent cover, there is no doubt that the receiver at once, on his appointment, acquires title to it; and that, as to the judgment debtor, and as to any one having notice of the proceeding, that title relates back to the time of issuing the execution. *Coleman* v. *Roff*, *16 Vr. 7*. "With regard at least to the personal property, *choses in action*, and equitable interests of the debtor, the title passes to the receiver in virtue of his appointment." *Harrison* v. *Maxwell*, *15 Vr. 316*.

The execution in the present case was issued on May 5th, 1885, the order for discovery made on July 1st, 1886, and the receiver appointed on July 15th, 1886. As we have seen the building was not completed till about August 3d, 1886.

The "property" of the judgment debtor which passed to the receiver included, I think, the building contract in question (so far, at least, as was necessary to protect the judgment creditors' claim, *Bostwick* v. *Menck*, *40 N. Y. 383*), and whatever should

grow out of it by means of its further prosecution by the judgment debtor, or on his account.

The argument that the material-man has a lien under the third section of Lien law, arising the instant he furnishes materials, so that the receiver takes *cum onere*, is expressly negatived in *Craig* v. *Smith, 8 Vr. 549.* See, also, *Payne* v. *Wilson, 74 N. Y. 348, 356.* His right to the special fund does not arise till he serves his notice—before that he is only a general creditor.

If, then, the word "property" includes unfinished contracts of the debtor, the assignee's title to this final payment preceded the right which Bradley and Currier sought to acquire by their notice. *Payne* v. *Wilson, 74 N. Y. 348,* holds that such a notice will not prevail against a prior equitable right to the fund, although unknown to the material-man, and that his position under his notice is not like that of a *bona fide* purchaser without notice.

In *Craig* v. *Smith, 8 Vr. 549,* the contractor had assigned for benefit of creditors before the notice was served, so that the application of the doctrine is no harder on the material-man in this instance than it was in that case.

Whether the receiver was equitably bound to inform persons who might continue to furnish labor or materials of his position is not very important at this time, as Bradley and Currier appear to have furnished most of their materials before the appointment. But such a duty on his part does not clearly appear; their credit was given to the contractor, or on his personal responsibility. The receiver was not bound to inquire into the account between them and the contractor; for aught that appeared to him they might have other security, or might be willing to go on without it. The result thus reached is adverse to the claim of Bradley and Currier, and requires a decree that the receiver is entitled to the whole fund, it being less than the amount of the judgment.

In the controversy between the receiver on the one hand and Mrs. Willison and the material-men and laborers on the other, the court of chancery adjudged on the foregoing opinion, "That

the building contract in the complainant's bill mentioned, made in the name of the defendant, Julia B. Willison, with the complainant, and bearing date the 3d day of March A. D. 1886, was in reality the contract of James T. Willison, the husband of the said Julia B. Willison, and was made by the said James T. Willison, in the name of his said wife, as a cover and fraudulent device for the purpose of hindering and delaying his judgment creditor, George M. Douglass, in the collection of his judgment in the answer of the defendant receiver mentioned." And that court decreed, "That the said sum of one thousand dollars remaining in the hands of the said complainant, and due on said building contract, was the property of the said James T. Willison and not of the defendant, Julia B. Willison, and that the same, by virtue of the force and effect of the statute in such case made and provided, became the property of the said defendant, Albert B. C. Salmon, by his appointment by said supreme court as receiver of the property and things in action of the said James T. Willison, and that said sum, at the time of the completion of said contract and the filing of the bill of complaint in this cause, was the property of said receiver, and was not subject to the claims of or payable to either or any of the other defendants in this cause."

From this decree Mrs. Willison appealed.

*Mr. Frank E. Bradner*, for the appellant.

*Mr. John W. Griggs*, for the respondent.

The opinion of the court was delivered by

VAN SYCKEL, J.

In March, 1886, one Elizabeth Bowlby made a contract for the erection of a house on her premises in Newark with James B. Willison, who claimed to be acting as the agent for his wife, Julia B. Willison. The building was completed about the 3d of August, 1886, and the final payment of $1,000 was due August 14th, 1886.

By proceedings taken under a judgment against said James·
B. Willison, an order for discovery was made July 1st, 1886,
and on the 15th of July, 1886, Albert B. C. Salmon was ap-
pointed receiver.

In July, 1886, the receiver served notice upon Mrs. Bowlby,.
claiming the final payment upon said building.

Claims were also made upon her, under the third section of·
the Lien law (*Rev. p. 668*), by those who had furnished labor
and materials in the erection of the building.

Thereupon, after Willison had completed the building, Mrs.
Bowlby, admitting the said sum to be due to him, filed her bill.
of interpleader, making the several persons who had presented
these conflicting claims parties thereto.

No decree that the defendants should interplead was made in·
the cause, but all the defendants answered Mrs. Bowlby's bill,.
setting up their several claims upon the fund in question. In
this state of the pleadings, testimony was taken, and the case·
proceeded to final hearing, and a decree was made that the re-
ceiver appointed under the supplementary proceedings was enti-
tled to the said sum of $1,000.

The receiver rested his case upon an alleged fraudulent cover,
his contention being, that Willison took the contract for the·
building in the name of his wife, for the purpose of preventing
his creditors from reaching the profits which would accrue to·
himself from it. Under the testimony in this case, I think it
must be conceded that the contract was made in the name of the·
wife with a fraudulent intent, and the case must be dealt with
as though the husband was the contractor.

The question then arises as to the *status* of the receiver with.
respect to this fund.

Did this fund pass to the receiver under the Execution act
(*Rev. p. 394 § 26*)?

At the time of issuing the execution, and at the time the re- ·
ceiver was appointed, it was neither a debt nor a trust.

It was not *debitum in præsenti*, for the work on which pay-
ment depended was not entirely done.

It is not like the case of a debt existing, but not yet payable,.

which the debtor, by assignment or otherwise, may apply to the payment of the judgment against him.

But if before the debt accrues the judgment creditor can intervene at any stage of such contract as the present one, how will it be possible for the judgment debtor to perform any such contract or to pursue his avocation?

Manifestly, he would be at the mercy of his judgment creditor, and could be stopped in any work he might undertake whenever a sum exceeding $50 has been earned. It is clear that the judgment debtor, however willing he might be to appropriate all assets within his control to the liquidation of his debts, would be driven from the pursuit of contract work.

The defect to be amended by the act authorizing supplementary proceedings was the inability of the judgment creditor, by a proceeding at law, to reach a certain class of property belonging to his debtor.

The statute contemplated a wrongful withholding of property by the debtor from his execution creditor. The right to relief could not arise until the debtor was in default. Until the debt was in existence, there could be no unlawful withholding of it.

In my judgment, the statute does not operate upon such an inchoate right.

It was intended to reach the dishonest debtor who fails or refuses to turn over to his creditor the property within his control, and not the unfortunate debtor, to whom no fault can be imputed save that he has not also turned over the right to his future earnings.

In this case it appears that but little of the work remained to be done before the final payment would become due, but that cannot affect the legal rule.

If in any case the creditor can seize upon such a right, he can in every case, without regard to the progress the contractor has made in the execution of his undertaking.

If a different conclusion had been reached in this case, the receiver's claim could not be superior to that of the claimants under the Lien law.

Willison v. Salmon.

All the receiver could acquire was the right, legal and equitable, which resided in the judgment debtor.

The receiver obtained no legal lien in this case, and if he could have acquired an equitable lien, he must have taken subject to the equities to which the money was liable.

The fund, being in court, would be primarily liable to the equities of the lien claimants, and the receiver could not ask the aid of the court without consenting to the liquidation of those claims.

In this case the lien men have not appealed, and that presents a difficulty in the way of establishing their claims in this court. There has been irregularity in the procedure on this bill of interpleader which has not been clearly waived.

The orderly course of proceeding is to take a decree that the defendants interplead, which withdraws the complainant in the original bill from further participation in the suit, and the case then becomes a case between the defendants as between a complainant and defendant. *Rowe* v. *Hoagland, 3 Hal. Ch. 131; Kirtland* v. *Moore, 13 Stew. Eq. 106.*

No such decree was taken in this case. Under these circumstances, the receiver having established no right to the fund, and Mrs. Willison, who has appealed, having asked for the payment of the lien claims, a decree should be made validating the lien claims and establishing their right to be paid out of the fund in court, when they shall be proven before a master.

The decree below should be reversed and the case remitted, that it may be proceeded in accordingly.

*For affirmance*—Depue, Dixon, Clement—3.

*For reversal*—The Chief-Justice, Garrison, Knapp, Reed, Scudder, Van Syckel, Brown, Cole, Whitaker —9.